# COURT OF APPEALS OF VIRGINIA

---

### Record No. 1270-25-2

---

REBECCA CROMACK

v.

CHARLOTTESVILLE DEPARTMENT OF SOCIAL SERVICES

---

Present: Judges Beales, Lorish and Duffan
Argued by videoconference

Opinion Issued July 21, 2026[*]

---

### FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Claude V. Worrell, Judge

Stephanie Cangin for appellant.

Samantha E. Freed (William M. Marshall, Guardian ad litem for the minor child; Tremblay & Smith, PLLC; Marshall & Marshall, P.C., on brief), for appellee.

---

### MEMORANDUM OPINION BY
### <u>JUDGE LISA M. LORISH</u>

Rebecca Cromack ("Mother") appeals the circuit court's order terminating her parental rights to her minor child under Code §§ 16.1-283(B) and (C)(2). Mother alleges that the circuit court erred in terminating her parental rights because the Charlottesville Department of Social Services ("the Department") did not offer her services following the child's removal. Finding no error, we affirm the circuit court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)). As discussed below, the record does not contain a transcript of the hearing during which the circuit court terminated Mother's rights. We nevertheless recite the facts from the record available to us.

Mother is the biological parent of S.W.,[2] who was almost three years old at the time of the termination hearing.[3] The Department first became involved with Mother in 2017 regarding her two older daughters.[4] The Department opened two separate family assessments for physical neglect of the children due to Mother's substance abuse; after each, the Department referred mother for substance abuse services. The Department opened an additional family assessment in 2019, due to substance abuse and mental health concerns, and another in 2021. Mother agreed to access mental health services as needed and to ensure the children had safe supervision at all times. Each time, the Department closed the assessments after determining that no other services were needed.

S.W. was born in February 2022. About one month later, officers received reports that Mother had driven while intoxicated with the children in the car, hit a parked car in a Walmart

---

[1] "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Va. State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023).

[2] We use initials instead of the child's full name to protect her privacy.

[3] Jonathan Walker ("Father") is the child's biological father. His parental rights were also terminated, but he is not a part of this appeal.

[4] Mother's older children, who are S.W.'s half-sisters, are not subject to this appeal.

parking lot, and then fled the scene. When officers arrived at Mother's home, they found her intoxicated, lying insensate in the front yard. All three children were home. The officers advised the Department that Mother was unable to care for S.W. given her intoxication. The police detained Mother, and the Department, unable to determine S.W.'s biological father, assumed custody of S.W. under an emergency removal order.[5] Mother later pleaded guilty to felony child abuse, which was reduced after she successfully completed probation to the misdemeanor offense of contributing to the delinquency of a minor.

The Department filed a petition for abuse and neglect. Mother agreed to a non-specific finding that S.W. was abused and neglected. The initial foster care goal was to return home. To that end, the Department required Mother to complete substance abuse treatment and individual therapy. The Department funded her weekly supervised visitation with S.W., individual therapy, and substance screening. It also required her to maintain a stable home and employment, participate in visitation with S.W., and remain in contact with the Department. Based on Mother's progress with the services, the Department placed S.W. with Mother on a trial basis, and the City of Charlottesville Juvenile and Domestic Relations Court ("the JDR court") eventually approved S.W.'s return home. Mother worked with the Department's in-home services until April 2023, when the Department determined that no other services were needed.

One month later, the Department received a report that Mother had been arrested on outstanding criminal warrants for credit card fraud. Mother was intoxicated when the police arrived to arrest her, so the Department again took custody of S.W. Mother was also charged with felony endangerment of a child while in her custody, to which she later pleaded guilty. She received a suspended sentence of three years.

---

[5] The two older children were placed with their respective biological fathers.

The Department filed another petition for abuse and neglect and removed S.W. under an emergency removal order. The JDR court adjudicated S.W. as abused and neglected on June 21, 2023. The JDR court entered a dispositional order of abuse and neglect and approved the foster care goal of return home. After S.W.'s removal, the Department provided Mother with funding for a substance abuse and mental health assessment, drug screens, and clinical supervised visits with S.W. To achieve the goal of S.W. returning home, the Department required Mother to maintain stable housing and employment, resume visitation with S.W., and complete substance abuse treatment. Mother progressed in her goals, and the JDR court entered a permanency planning order for S.W. to return home in August 2024.

Approximately two weeks after S.W. returned home to Mother's care, officers responded to a call that Father had physically assaulted Mother while the children were upstairs. One of the older children called down to Mother to offer help and, at Mother's instruction, called 911. When officers arrived, Mother explained that she and Father had been drinking and that Father strangled her to the point of losing consciousness when she tried to end their relationship. At Mother's request, S.W.'s previous foster mother picked her up, and Mother went to the hospital. The Department removed S.W. from Mother's custody under an emergency removal order, and S.W. reentered foster care on September 3, 2024.

The Department filed a third petition for abuse and neglect. The JDR court adjudicated S.W. abused and neglected and entered a dispositional order on November 6, 2024.[6] The Department later petitioned to terminate Mother's parental rights. The JDR court terminated her rights, and Mother appealed to the circuit court.[7] After a hearing, the circuit court adjudicated

---

[6] It does not appear from the record that Mother appealed the dispositional order.

[7] The permanency planning hearing was pending in the JDR court.

- 4 -

S.W. abused and neglected and terminated Mother's parental rights under Code §§ 16.1-283(B) and (C)(2). Mother now appeals to this Court.

ANALYSIS

"On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce*, 75 Va. App. at 699 (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

There is a threshold procedural issue that requires us to affirm in this case. We do not have the transcript from the hearing at which the circuit court terminated Mother's parental rights. At oral argument before this Court, Mother's counsel explained that a different attorney had represented her during the termination hearing and indicated that a transcript from that hearing had been ordered. But we never received it. Under our longstanding caselaw, "the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of." *Patterson v. City of Richmond*, 39 Va. App. 706, 717 (2003) (quoting *Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993)). Rule 5A:8 requires a party to file a transcript or a written statement of facts. "When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii). To evaluate whether the court erred in terminating Mother's parental rights, we would need to

review the transcript and any testimony that was provided at that hearing. Under Rule 5A:8(b)(4)(ii), we will not consider an assignment of error based on a necessary but omitted transcript.

With that said, we appreciate that Mother only gets one opportunity to appeal this decision that resulted in the permanent termination of her parental relationship with S.W. This is not a decision taken lightly by any court. *See C.S. v. Va. Beach Dep't of Soc. Servs.*, 41 Va. App. 557, 564 (2003) ("Our prior decisions clearly indicate a respect for the natural bond between children and their natural parents. The preservation of the family, and in particular the parent-child relationship, is an important goal for not only the parents but also government itself." (quoting *Weaver v. Roanoke Dep't of Hum. Res.*, 220 Va. 921, 926 (1980))). Mother assigns error to the circuit court's decision to terminate her parental rights because "no services, appropriate, reasonable or otherwise, were offered" to her after S.W. was brought into foster care for the final time.[8] Mother also describes the final incident that brought S.W. into foster care as a domestic violence incident, and argues that—while the Department previously provided her with substance abuse and mental health treatment—they never provided her with assistance as a victim of domestic violence

---

[8] In her briefing, Mother only argues that the circuit court erred in terminating her parental rights under Code § 16.1-283(C)(2) and does not address the court's separate conclusion that termination was also appropriate under Code § 16.1-283(B). "It is well-settled that a party who challenges the ruling of a lower court must on appeal assign error to each articulated basis for that ruling." *Ferguson v. Stokes*, 287 Va. 446, 452 (2014) (quoting *Manchester Oaks Homeowners Ass'n v. Batt*, 284 Va. 409, 421 (2012)). Thus, "in 'situations in which there is one or more alternative holdings on an issue,' the appellant's 'failure to address one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue.'" *Johnson v. Commonwealth*, 45 Va. App. 113, 116 (2005) (quoting *United States v. Hatchett*, 245 F.3d 625, 644-45 (7th Cir. 2001)). At the same time, her argument that the Department did not provide reasonable services is relevant to both subsections, so we will not default her appeal on this basis. *See Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14 Va. App. 333, 335 (1992) ("While it is true that no specific, detailed argument was presented addressing the required findings under Code § 16.1-283(B), it is clear to us that Ferguson's position encompassed both subsections. Indeed, the trial court made the required statutory findings necessary to invoke both subsection B and C. We cannot find in this record that the trial court was unaware of Ferguson's position.").

before terminating her relationship with S.W. Even if we could reach the merits of Mother's argument, the evidence before us shows that she did receive reasonable services before her parental rights to S.W. were terminated, and thus we would affirm the circuit court in any event.

A court needs to make three findings to terminate a parent's rights under Code § 16.1-283(C)(2):

> (1) that termination is in the child's best interest, (2) that, without good cause, the parent failed to substantially remedy the conditions that led to, or required continuation of, the child's placement in foster care, and (3) that the Department made reasonable and appropriate efforts to help the parent remedy those conditions.

*Joyce*, 75 Va. App. at 701. "We have held that the 'reasonable and appropriate' efforts of the Department can only be judged with reference to the circumstances of a particular case and that 'a court must determine what constitutes reasonable and appropriate efforts given the facts before the court.'" *Id.* (quoting *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 163 (2004)). A court must also "take into consideration" the prior efforts of such agencies' efforts "to rehabilitate the parent or parents" prior to the placement of S.W. in foster care. Code § 16.1-283(C)(2); *see Harrison*, 42 Va. App. at 156 (beginning its analysis of a Code § 16.1-283(C)(2) appeal at the start of the Department's involvement with the family, even though that involvement began several years before the termination of parental rights).

We consider the Department's efforts to support Mother starting in 2022, when S.W. was first placed in foster care at one month old. Following this first incident, the Department helped Mother enroll in substance abuse treatment as well as individual therapy. Mother complied, and the Department eventually determined that she was fit for unsupervised visitation with S.W. The Department then provided in-home services in support of this visitation until April 2023, when it determined that no other services were needed. When S.W. returned to her foster home one month later, the Department provided Mother with funding for a substance abuse and mental health

assessment, drug screens, and clinical supervised visits with S.W.  Mother cooperated, and S.W. returned to her custody in August 2024.  Only two weeks later, Mother was hospitalized after she was assaulted by Father while both were intoxicated, and S.W. returned to foster care.

Mother is right that the Department declined to offer her more services after she was the victim of domestic abuse and before it petitioned to terminate her rights.  But this suggests that S.W. was removed because Mother was assaulted.  And the limited evidence available to us in the record, in the light most favorable to the Department, shows that S.W. was removed because barely two weeks after Mother regained custody of S.W., she was drinking again, and S.W. was exposed to a violent and volatile home environment.

While the Department did not provide her with resources related to domestic violence, the Department made repeated efforts, beginning shortly after S.W.'s birth in early 2022, to support Mother's parenting of S.W., offering her multiple rounds of substance abuse treatment and mental health care.  The Department also spent considerable time and resources supervising Mother's visitation with S.W. so that S.W. could return to Mother's care.  And while Mother complied with those services to the point of twice regaining custody of S.W., both times her custody was short-lived.  Mother's demonstrated history of alcohol abuse supports the trial court's finding that, notwithstanding the Department's support and resources, Mother failed to remedy her substance abuse such that termination of her parental rights aligns with S.W.'s best interests.  *See Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) ("[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005))).

We reach the same conclusion about the court's application of Code § 16.1-283(B). Termination under this part of the statute requires a finding that the child

had been neglected or abused; that such neglect or abuse presented a serious and substantial threat to [her] life, health or development, and that it was not reasonably likely that the conditions could be substantially corrected or eliminated so as to allow the child's safe return to [Mother] within a reasonable period of time.

*Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14 Va. App. 333, 340 (1992). Mother repeatedly used substances while responsible for S.W.'s wellbeing. She did so to the point of driving S.W. while intoxicated and leaving S.W. without adult supervision when she was only one month old. Mother did not respond to several rounds of substance abuse treatment, and she was drinking when she argued with and was ultimately assaulted by Father.

Without a transcript, we cannot know what additional evidence may have been presented at the termination hearing. But given Mother's pattern of substance abuse, and the Department's efforts to assist her with her substance abuse problem over a period of years, we would not be able to find error in the trial court's determination that she was not reasonably likely to make the necessary behavioral changes to create a safe and healthy environment for S.W.

CONCLUSION

For these reasons, the circuit court's judgment is affirmed.

*Affirmed.*